1    **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9    Timera Quinn,                                  No. CV-18-02461-PHX-MTL

10                    Plaintiff,                     **ORDER**

11   v.

12   Julio Cardenas, et al.,

13                    Defendants.

14

15       Defendant Julio Cardenas' Motion for Summary Judgment (Doc. 38) is granted, in

16   part, with respect to the Plaintiff's federal claims. The remaining state law claims are

17   remanded to the Arizona Superior Court. The Court's reasoning is provided below.

18   **I.      FACTUAL BACKGROUND**

19       Plaintiff Timera Quinn sues City of Phoenix Police Officer Julio Cardenas relating

20   to an incident between her and Officer Cardenas dating back to May 14, 2017. Late in the

21   evening, both Ms. Quinn and Officer Cardenas were operating their vehicles on the

22   southbound Loop 101 freeway in Phoenix. Ms. Quinn was accompanied by two male

23   passengers. Officer Cardenas was off-duty and operating his personal vehicle with his ex-

24   wife, Ms. Cardenas, in the front passenger seat.

25       At about the same time, both motorists exited the freeway via the Camelback Road

26   off-ramp. Officer Cardenas was the first to do so, with Ms. Quinn close behind. Officer

27   Cardenas stopped on the off-ramp and waited to turn right onto Camelback Road. His

28   destination was a QuickTrip convenience store ("QT") located just off the intersection. The

1    two vehicles impacted one another while Officer Cardenas was waiting to make his turn.

2    At this point, the parties' recollections diverge.[1] Ms. Quinn states that, as she approached

3    the intersection, and while slowing her vehicle to a stop, Officer Cardenas backed his

4    vehicle into hers and then "immediately fled the scene." (Doc. 41 at 2.) Ms. Quinn states

5    that she followed Officer Cardenas into the QT parking lot.

6        Officer Cardenas contends that Ms. Quinn's vehicle impacted his. He said that "[a]t

7    the moment the impact occurred, [he] heard a metallic noise and felt a push, but was unsure

8    if someone had hit his car." (Doc. 38 at 2.) Officer Cardenas says that he looked in his

9    rearview mirror and did not see a car behind his. It was, after all, dark outside. He drove

10   away from the off ramp, he says, because he could not tell if the noise came from a

11   vehicular impact or a mechanical issue in the vehicle's engine compartment. Officer

12   Cardenas drove into the QT parking lot and stopped his car. Upon inspecting the vehicle's

13   rear bumper, he saw damage indicating that a collision had occurred.

14       Ms. Quinn drove into the QT parking lot to meet up with Officer Cardenas. She

15   stopped her vehicle. One of Ms. Quinn's passengers, Mr. West, exited the vehicle and

16   approached Officer Cardenas. The two began a discussion about which driver was at fault.

17   According to deposition testimony, this was a heated exchange and the parties dispute

18   whether Officer Cardenas offered to exchange insurance information. The parties agree

19   that, during his discussion with Mr. West, Officer Cardenas did not identify himself as a

20   police officer nor did he call the police.

21       Mr. West returned to Plaintiff's car. Thinking that the situation was over, Ms. Quinn

22   began driving out of the parking lot. Officer Cardenas, however, viewed her actions as

23   "fleeing the scene" before insurance information could be exchanged. On foot, Officer

24   Cardenas gave chase to obtain the license plate number. Seeing Officer Cardenas in pursuit,

25   Ms. Quinn turned her vehicle around and drove up beside him. Ms. Cardenas, still in or

26   near her ex-husband's car, called 9-1-1.

27

28   _____
     [1] The parties agree that the dispute over which driver is at fault for the impact is not material for the purposes of deciding the summary judgment motion.

1    Now Ms. Quinn and Officer Cardenas begin to exchange words. She exits her car.

2 They verbally disagree about who caused the accident and whether the "scene" is the QT

3 parking lot or the freeway off-ramp. Ms. Quinn approaches Officer Cardenas. Ms. Quinn

4 shouted, "why are you chasing me, you f***** hit us then drove off." (Doc. 38 at 4.)

5 According to him, Ms. Quinn is "within inches of his face." (*Id.*) Ms. Quinn's two

6 passengers, Mr. West and Mr. Bonds, exit her vehicle to join her. Seeing this, and out of

7 concern that a three-on-one situation may lead to a more severe altercation, Officer

8 Cardenas executed an "impact push" against Ms. Quinn. Using his two hands against her

9 upper chest, this maneuver pushed her backwards while he took a step backwards. Officer

10 Cardenas states that his objective in doing so was to create space between Ms. Quinn and

11 himself, thereby de-escalating the altercation.[2]

12    Ms. Quinn, on the other hand, viewed Officer Cardenas' action as an assault to

13 which she was entitled to exercise self-defense. She did not yet know that Officer Cardenas

14 was a law enforcement officer. Ms. Quinn pushed him back using both of her hands. After

15 that, Officer Cardenas drew his service handgun from its holster, tucked inside his clothing

16 in his lower back, and announced that he was a City of Phoenix Police Officer. Officer

17 Cardenas states that he pointed the gun at the ground. Ms. Quinn states that it was pointed

18 at her stomach.[3] Officer Cardenas ordered Ms. Quinn to return to her vehicle and turn off

19 the engine. She, along with her two passengers, walked back to the car and got in. Officer

20 Cardenas followed them to the vehicle.

21    After taking her seat, Ms. Quinn attempted to close the door. She explained that she

22 wanted to move her vehicle to a parking space. Officer Cardenas thought that she was about

23 to drive away, so he held the door open. They struggled over the door. Ms. Quinn ultimately

24 releases the door and turns off her vehicle. Officer Cardenas had his weapon drawn during

25

26 [2] According to the Arizona Department of Public Safety General Report produced after the QT altercation, an impact push "is a double palm heel strike to the body, which is taught

27 per Arizona Police Officer Training Standards and Training Board (AZPOST) direction to police officers. This is a defensive tactic designed to create distance between police

28 officers, and assailants who move aggressively toward them." (Doc. 38-1 at 129.)
[3] For the purposes of this Motion only, Officer Cardenas accepts as true Ms. Quinn's allegation that the gun was pointed at her. (Doc. 38 at 5 n.2); (Doc. 45 at 5 n.3.)

- 3 -

1   this time and only re-holstered it after Ms. Cardenas announced that the police were on

2   their way. According to Ms. Quinn, "the weapon was pointed at her for a period of 3-5

3   minutes." (Doc. 41 at 4.) Ms. Quinn believed that she had been arrested because Officer

4   Cardenas prevented her from leaving. The police arrived sometime thereafter.

5          Later, Ms. Quinn filed a state court complaint against Officer Cardenas alleging

6   civil claims under 43 U.S.C. § 1983 for "depriving [her] of her right to be free from

7   unlawful search and seizure as secured by the constitution."[4] (Doc. 1-1 at 4.) She further

8   asserted Arizona state law claims for assault, intentional infliction of emotional distress,

9   and wrongful arrest and false imprisonment. (*Id*. at 5.) The case was timely removed to this

10  Court. (Doc. 1.)

11  **II.     SUMMARY JUDGMENT STANDARD**

12         Summary judgment is appropriate if the evidence, viewed in the light most favorable

13  to the nonmoving party, demonstrates "that there is no genuine dispute as to any material

14  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

15  genuine issue of material fact exists if "the evidence is such that a reasonable jury could

16  return a verdict for the nonmoving party," and material facts are those "that might affect

17  the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*,

18  477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-

19  movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at

20  255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d

21  1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but

22  does not weigh the evidence or determine the truth of matters asserted).

23  **III.    SECTION 1983 AND QUALIFIED IMMUNITY**

24         Section 1983 provides a civil remedy against individual state actors for violations

25  of the Constitution and laws of the United States. The Complaint generally asserts the basis

26

27  [4] The Complaint also named the City of Phoenix Police Department, Jane Doe Cardenas, Employees I–X and Black and White Corporations I–X. The City of Phoenix Police Department was voluntarily dismissed. (Doc. 12.) Jane Doe Cardenas, Employees I–X and

28  Black and White Corporations I–X have been dismissed as unserved fictitious defendants. (Doc. 50.)

of Ms. Quinn's § 1983 claim is that Officer Cardenas "deprived [her] of her right to be free from unlawful search and seizure" under the Fourth Amendment. (Doc. 1-1 at 4.) Claims for excessive force, wrongful arrest, and false imprisonment derive from the Fourth Amendment.[5] The timeline includes at least three events that can give rise to liability under § 1983. First, there was the impact push administered by Officer Cardenas against Ms. Quinn. Next, there was the point where Officer Cardenas drew his service weapon, pointed it at Ms. Quinn, and announced that he was a police officer. The third and final event involved Officer Cardenas ordering Ms. Quinn back into her car and to remain there until the police arrived.

Officer Cardenas maintains that his actions were constitutional but, at the same time, he asserts qualified immunity as a defense to Ms. Quinn's § 1983 claims. Qualified immunity bars monetary recovery against a state official "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Whether a defendant is entitled to assert qualified immunity as a defense is a question of law for the court to decide. *See Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court will address the second qualified immunity factor, whether the right asserted by the plaintiff was clearly established at the time, as it is dispositive. The plaintiff bears the burden to show "that the right at issue was clearly established." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Alston v. Read*, 663 F. 3d 1094, 1098 (9th Cir. 2011)). The clearly established test is an objective one that is viewed from the standpoint of the reasonable officer. *District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 586 (2018). It "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well

---

[5] Liability requires that the defendant act under color of law. The parties agree that Officer Cardenas was acting under color of law during his interaction with Ms. Quinn.

1    defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation

2    he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The Supreme

3    Court has described this standard as requiring "a high 'degree of specificity.'" *Id.* (quoting

4    *Mullenix v. Luna*, 577 U.S. ---, 136 S. Ct. 305, 309 (2015)). Functionally, "[t]his

5    demanding standard 'protects all but the plainly incompetent or those who knowingly

6    violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

7           Here, Ms. Quinn has failed to satisfy her burden that clearly established law would

8    have prohibited Officer Cardenas' impact push under the presented circumstances. Officer

9    Cardenas utilized the impact push to create distance between himself, on the one hand, and

10   Ms. Quinn and her two male passengers, on the other. Officer Cardenas and Ms. Quinn

11   were engaged in a shouting match at close proximity. From the perspective of a reasonable

12   officer, the situation could have deteriorated to a much more serious altercation where

13   Officer Cardenas would be outnumbered three to one and without knowledge of whether

14   any of the individuals were armed.

15          Ms. Quinn has similarly failed to show that established law would have prohibited

16   Officer Cardenas' use of his service weapon under the circumstances presented. The Court

17   acknowledges, first, that Ms. Quinn may have felt justified in taking measures to protect

18   herself by pushing back and, second, that a gun pointed at one's abdomen is gravely

19   concerning. The legal test, however, focuses on whether reasonable officers are on alert

20   "that *their particular conduct* was unlawful." *Sharp v. City of Orange*, 871 F.3d 901, 911

21   (9th Cir. 2017) (emphasis in original). Ms. Quinn's position is that a reasonable officer

22   should know that the use of deadly force, "absent a sufficiently substantial and immediate

23   threat, [violates] the Fourth Amendment." (Doc. 41 at 11 (quoting *Mullenix v. Luna*, ---

24   U.S. at ---, 136 S. Ct. at 308.)) The facts of the cases that she cites for this proposition,

25   however, vary substantially from the facts presented here. The most salient point of

26   distinction is that many of the cases involve the actual use of force, such as deploying a

27   Taser shot, administering pepper spray, or the occurrence of extreme physical contact. *E.g.*,

28   *Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) (officer body-slammed plaintiff to the

1

2

3

4

5

6

ground);[6] *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (officers administered pepper spray to plaintiff, physically subdued him, and ordered a canine attack); *Hesterberg v. United States*, 71 F. Supp. 3d 1018 (N.D. Cal. 2014) (defendant officer deployed a Taser dart that struck the plaintiff). Here, Officer Cardenas did not fire his weapon. He used it with the objective of calming a heated verbal altercation, that could very well have led to a physical exchange, while waiting for on-duty law enforcement to arrive.

7

8

9

10

Ms. Quinn cites *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), a case where the Ninth Circuit found that a police officer violated the Fourth Amendment when he pointed a gun to the plaintiff's head from three or four feet away. The weapon was not discharged. The court observed,

11

12

13

14

15

> In this case, it is not alleged that any of the factors justifying the use of force were present. The crime under investigation was at most a misdemeanor; the suspect was apparently unarmed and approaching the officers in a peaceful way. There were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the plaintiff.

16

*Id.* at 1014.

17

18

19

20

21

22

23

24

As opposed to the plaintiff's conduct in *Robinson*, Ms. Quinn's interaction with Officer Cardenas cannot be described as peaceful. She engaged in a verbal argument with him and, at one point, shoved him hard enough that he was pushed back from where he stood. After the pushing, Officer Cardenas thought that Ms. Quinn was attempting to leave the scene in her car. Unlike the situation in *Robinson*, where the plaintiff was outnumbered by police, Officer Cardenas was outnumbered by Ms. Quinn and her two friends, both of whom were by her side during the exchange. And Officer Cardenas was not aware of whether any of the three had a weapon that he did not know about. Under these facts, a

25

26

27

28

---

[6] *Westfall v. Luna* is inapposite for the additional reason that it was decided after the challenged conduct. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").

1   reasonable officer would be concerned for his or her safety and the use of Officer Cardenas'

2   weapon was therefore justified for the purposes of the qualified immunity analysis.

3          Ms. Quinn also argues that in addition to case law, Officer Cardenas knew that use

4   of his service weapon was unlawful based on City of Phoenix Police Department policies

5   regarding "minor traffic offenses, use of excessive force, use of deadly force when not

6   faced with death or serious physical injury, and use of a firearm after consuming alcohol."

7   (Doc. 41 at 12); (Doc. 41-1 at 92–99.) However, departmental policies have no bearing on

8   whether a defendant violated a clearly established constitutional right. *See Cousins v.*

9   *Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (finding defendants entitled to qualified

10  immunity because "[violating] state departmental regulations do not establish a federal

11  *constitutional* violation") (emphasis in original); *see also Case v. Kitsap County Sheriff's*

12  *Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) ("[T]here is no § 1983 liability for violating prison

13  policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . .")

14  (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). The Police Department's

15  policies therefore do not prevent a finding of qualified immunity.

16         Finally, Ms. Quinn has not identified any established law that prohibited Officer

17  Cardenas from holding Ms. Quinn, with his weapon in hand, while waiting for on-duty

18  officers to arrive. For reasons already expressed, Officer Cardenas is entitled to qualified

19  immunity.

20  **IV.    STATE LAW CLAIMS**

21         The remaining claims are for assault, intentional infliction of emotional distress, and

22  false arrest under state law. (Doc. 1-1 at 4–5.) A district court may decline to exercise

23  supplemental jurisdiction over pendent state law claims when it has dismissed the claims

24  over which it has original jurisdiction.[7] *See* 28 U.S.C. § 1367(c)(3). In such circumstances,

25  "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial

26  economy, convenience, fairness, and comity—will point toward declining to exercise

27  _____

28  [7] No party has alleged that diversity jurisdiction exists in this case. Plaintiff states that both parties are Arizona residents (Doc. 1-1 at 2), and in its Notice of Removal, Defendant references only Plaintiff's federal law claim pursuant to 42 U.S.C. § 1983 as a basis for jurisdiction. (Doc. 1 at 2.)

1    jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

2    U.S. 343, 350 n. 7 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725

3    (1966) ("Certainly, if the federal claims are dismissed before trial, even though not

4    insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")).

5         These factors weigh against retaining supplemental jurisdiction and in favor of

6    remanding the state law claims to the Maricopa County Superior Court. First, Plaintiff

7    initially filed the case in state court; it came to federal court because Defendants removed

8    it. (Doc. 1.) Second, the parties both reside in Maricopa County, making it a convenient

9    forum. (Doc. 1-1 at 2; Doc. 9 at 1.) Third, judicial economy supports a remand. No trial

10    date has been set in the pending matter, and the Court anticipates that the parties could

11    refile the same or substantially similar summary judgment briefing on the state law claims

12    in state court with limited additional effort. Fourth, comity dictates that as a court of limited

13    jurisdiction, this Court should defer to the state court on issues of purely state law such as

14    these. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless

15    decisions of state law should be avoided both as a matter of comity and to promote justice

16    between the parties, by procuring for them a surer-footed reading of applicable law."). The

17    Court will therefore exercise its discretion under 28 U.S.C. § 1367(c)(3) and remand the

18    remaining state law claims to the Maricopa County Superior Court.

19    **V.**      **CONCLUSION**

20         Accordingly,

21         **IT IS ORDERED** that Defendant Cardenas' Motion for Summary Judgment (Doc.

22    38) is **granted in part** as to the 42 U.S.C. § 1983 claim (paragraph IX of the Complaint,

23    Doc. 1-1) because Officer Cardenas is entitled to qualified immunity.

24         **IT IS FURTHER ORDERED** that the Court remands the state law claims of

25    assault, intentional infliction of emotional distress, and false arrest (paragraphs XI–XII of

26    the Complaint) to the Arizona Superior Court in Maricopa County.

27         **IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment for

28    Defendant on Plaintiff's § 1983 claim (paragraph IX of the Complaint), remand the

1   remaining counts to the Maricopa County Superior Court, and then terminate this action in

2   this Court.

3          Dated this 15th day of May, 2020.

4

5

6                                          Michael T. Liburdi
                                           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28